UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff/Respondent, | ) | No. 6:12-CR-01-ART-HAI-2 |
| | ) | No. 6:13-CV-7312-ART-HAI |
| v. | ) | |
| CRAIG WEST, | ) | RECOMMENDED DISPOSITION |
| Defendant/Movant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On September 30, 2013, Defendant Craig West filed a Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. D.E. 282. The United States filed a response to Defendant's Motion on December 6, 2013. D.E. 295. The Court ordered that any reply by Defendant be filed on or before January 9, 2014. D.E. 296. Defendant did not file a timely reply. The Court conducted a limited evidentiary hearing on June 24, 2014. D.E. 333. Pursuant to local practice and 28 U.S.C. § 636(b)(1)(B), this matter was referred to the undersigned for a recommended disposition. For the reasons that follow, Defendant has failed to establish that he is entitled to relief pursuant to 28 U.S.C. § 2255. Therefore, the Court **RECOMMENDS** that his motion be **DENIED**. The Court further **RECOMMENDS** that no Certificate of Appealability be issued.

### I. BACKGROUND

#### A. Pre-trial Proceedings

On January 26, 2012, a federal grand jury returned an indictment as to Craig West, as well as his co-defendants Darmus J. Dalton, Blake Gumm, William Padgett, Christi N. Combs, Joseph Edward Stripling, and Andrea J. Ridner. D.E. 1. The single count returned alleged that

Defendant conspired with his co-defendants "to knowingly and intentionally distribute, and possess with intent to distribute, a quantity of pills containing oxycodone, a Schedule II controlled substance, violations of 21 U.S.C. § 841(a)(1), all in violation of 21 U.S.C. § 846." *Id.* Defendant faced a statutory maximum of twenty years of incarceration, a fine of up to $1,000,000.00, and supervised release for at least three years. *See* 21 U.S.C. § 841(b)(1)(C).

At Defendant's initial appearance in this District and arraignment on February 17, 2012, Brandon J. Storm was appointed as Defendant's attorney pursuant to the Criminal Justice Act. D.E. 69. Defendant pled not guilty and was released under conditions. *Id.*

### B. Trial and Sentencing

Defendant's trial, as well as that of his co-defendants Darmus J. Dalton and Christi N. Combs, began on May 7, 2012. D.E. 184. The trial lasted three days, and included testimony from 14 witnesses for the United States. D.E. 268; D.E. 269; D.E 270. Defendant did not call any witnesses on his behalf; however, his co-defendant Christi N. Combs testified in her own defense. D.E. 270 at 110–39. Among the witnesses for the United States were two co-defendants who had pled guilty, specifically Blake Gumm (D.E. 269 at 180–236) and Joseph Stripling (*Id.* at 360–84). Additionally, two witnesses for the United States were defendants in a related matter (*United States v. Robert Thomas Gumm*, 6:11-CR-46-ART-HAI) (D.E. 4) who had also pled guilty, specifically Robert Thomas Gumm (D.E. 269 at 36–178) and Kendra Eldridge (D.E. 268 at 92–244; D.E. 269 at 12–35). All four of these witnesses testified that they had signed a plea agreement, that they anticipated the potential of a reduced sentence due to their cooperation by testifying, and that they understood that whether or not they received a reduced sentence was the decision of the Court. D.E. 268 at 97–98 (Eldridge); D.E. 269 at 39–41 (Robert Thomas Gumm); D.E. 269 at 183–85 (Blake Gumm); D.E. 269 at 361–62 (Stripling).

At the conclusion of the first day of trial, Judge Thapar addressed several objections raised during Ms. Eldridge's testimony that day. D.E. 268 at 248–50. One of the objections was whether or not statements of co-conspirators are admissible. *Id.* at 248. Judge Thapar ruled that "statements of co-conspirators are admissible if the United States establishes by a preponderance of the evidence that three factors are met. . . . That the conspiracy existed, that the defendant was a member of the conspiracy, and that the co-conspirators' statements were made in furtherance of the conspiracy." *Id.* The standard of preponderance of the evidence was mentioned again at the conclusion of the trial, when Judge Thapar instructed the jury that, while the United States had to prove the elements of the charge beyond a reasonable doubt, it only had to prove that at least part of the conspiracy took place in the Eastern District of Kentucky by a preponderance of the evidence. D.E. 270 at 159. However, Judge Thapar made very clear to the jury at that time that "all the other elements I have described must be proved beyond a reasonable doubt." *Id.*

On May 9, 2012, the jury found Defendant guilty of conspiracy to distribute and possess with intent to distribute oxycodone. D.E. 198 at 2. By Judgment entered September 13, 2012, Judge Thapar sentenced Defendant to a term of 115 months of incarceration with a five-year term of supervised release to follow. D.E. 247.

### C. Post-conviction Proceedings

Defendant did not file a timely appeal to the Court of Appeals for the Sixth Circuit. He filed a pro se appeal on March 11, 2013, nearly 6 months after the Judgment was entered in this case. D.E. 265. The Sixth Circuit dismissed the appeal as untimely. D.E. 271. Following the dismissal of his appeal, on July 26, 2013, Defendant filed a letter dated July 10, 2013, in the record addressed to Mr. Storm in which he notified Mr. Storm that he believed that Mr. Storm

had provided ineffective assistance of counsel for failing to file a direct appeal on Defendant's behalf. D.E. 275.

On September 30, 2013, Defendant filed a Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. D.E. 282. In his Motion, Defendant asserts nine bases for relief:

1. That counsel did not file an appeal on his behalf as he requested (*Id.* at 4, 5, 9);

2. That the trial judge instructed the jury that it need only find Defendant guilty by a preponderance of the evidence rather than beyond a reasonable doubt, and counsel was ineffective for failing to object to the erroneous instruction (*Id.* at 13);

3. That counsel refused to allow Defendant to testify in his own defense (*Id.*);

4. That counsel failed to present a defense because he did not put on proof of Defendant's addiction to oxycodone (*Id.*);

5. That counsel did not object to the government's use of Defendant's medical and pharmaceutical records and its assertion that Defendant sold every pill prescribed to him (*Id.*);

6. That Defendant was denied his right to testify in his own defense because he did not do so because of counsel's urgings (*Id.* at 13–14);

7. That the United States denied Defendant due process of law by using his legitimate prescription history for one year in calculating the amount of oxycodone attributable to Defendant (*Id.* at 14);

8. That the United States denied Defendant due process of law by letting witnesses who had entered into plea agreements in the same or a related case testify that they were

not receiving any relief as to sentencing in exchange for their testimony at Defendant's trial (*Id.*); and

9. That the Court denied Defendant due process of law by instructing the jury that it need only find Defendant guilty by a preponderance of the evidence rather than beyond a reasonable doubt (*Id.*).

The United States filed its response on December 6, 2013. D.E. 295. The Court then ordered Defendant to file any reply on or before January 9, 2014. D.E. 296. Defendant did not file a timely reply.

Defendant requested an evidentiary hearing in his section 2255 motion (D.E. 282 at 12), and upon review of the filings and the record as a whole, the Court determined that an evidentiary hearing was necessary. The Court found that although it was a very close question, there was a factual dispute regarding whether Defendant instructed Mr. Storm to file an appeal. D.E. 319. On April 8, 2014, the Court scheduled an evidentiary hearing to resolve the issue of whether or not Defendant instructed Mr. Storm to file an appeal on his behalf for May 27, 2014. *Id.* The Court appointed Hon. Eric Edwards to represent Defendant at the hearing. D.E. 320. Both Defendant and Mr. Storm testified at the hearing. D.E. 332. The parties declined to file post-hearing briefs.

## II. DISCUSSION

### A. Right to Collateral Attack

Generally, a prisoner has a statutory right to collaterally attack his conviction or sentence. *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) ("both the right to appeal and the right to seek post-conviction relief are statutory rights . . ."). For a federal prisoner to prevail on a 28 U.S.C. § 2255 claim, he must show that:

>the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack . . . .

28 U.S.C. § 2255(b). If the movant alleges a constitutional error, he must establish by a preponderance of the evidence, *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006), that the error "had a substantial and injurious effect or influence on the proceedings." *Watson*, 165 F.3d at 488 (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)). If the movant alleges a non-constitutional error, he "must establish a fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process." *Id.* (internal quotations omitted).

### B. Procedural Default

A federal prisoner's failure to raise a claim on direct appeal, excepting claims of ineffective assistance of counsel, results in a procedural default of that claim. *Bousley v. United States*, 523 U.S. 614, 621 (1998); *Peveler v. United States*, 269 F.3d 693, 698 (6th Cir. 2001). A procedurally defaulted claim may nonetheless obtain review if the prisoner can show cause to excuse his failure to raise the claim on direct appeal and actual prejudice resulting from the alleged violation. *Bousley*, 523 U.S. at 622; *Peveler*, 269 F.3d at 698–700. If the prisoner fails to establish cause, it is unnecessary to determine if he was prejudiced. *Bousley*, 523 U.S. at 623.

A defendant has 14 days from the filing of the judgment to file a notice of appeal in the District Court to appeal his case to the Court of Appeals for the Sixth Circuit. Fed. R. App. P 4(b)(1)(A)(i). Defendant's judgment was entered on September 13, 2012. D.E. 247. Defendant thus had until September 27, 2012, 14 days later, to file a notice of appeal. Defendant filed a notice of appeal, pro se, on March 11, 2013, well after the 14-day period had elapsed. D.E. 265. The Sixth Circuit dismissed Defendant's appeal *sua sponte* as untimely, noting that "West

offered no reason for the delay, and identified no argument he wishes to assert on appeal." *United States v. West*, No. 13-5319, at *1 (6th Cir. 2013) (unpublished); D.E. 271 at 1.

Defendant's claims 6–9 are not ineffective assistance of counsel claims. They are claims which could have been raised in a timely direct appeal, and thus are subject to procedural default. However, Defendant asserts in his first claim that counsel provided ineffective assistance by failing to file an appeal on his behalf as instructed. Defendant alleges briefly in three separate places in his Motion that he instructed counsel to file an appeal, but that counsel either refused to do so after advising Defendant that he would receive a lengthier sentence if he did so (D.E. 282 at 4), advised him not to appeal because he would "go back in front of the same prosecutor and Judge and more likely than not . . . would receive a lengthier sentence" (*Id.* at 5), or was simply ineffective for failing to file an appeal (*Id.* at 9).

If Defendant can prove these allegations, counsel's inaction could constitute ineffective assistance, which is sufficient to show "cause." *See Ratliff v. United States*, 999 F.2d 1023, 1026 (6th Cir. 1993) (finding allegations by pro se litigant that he asked counsel to appeal "bear directly on the issue of cause and prejudice" and must be "construed liberally"); *see Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (citing *Rodriquez v. United States*, 395 U.S. 327 (1969)); *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998). In fact, in that context prejudice is **presumed**. *See Roe*, 528 U.S. at 483; *Ludwig*, 162 F.3d at 459 ("[F]ailure to perfect a direct appeal, in derogation of a defendant's actual request, is a *per se* violation of the Sixth Amendment."). Therefore it follows that, Defendant's allegation, if true, may satisfy the cause and prejudice exception, thus excusing the procedural default with respect to claims 6–9. *See Huff v. United States*, 734 F.3d 600, 606 (6th Cir. 2013); *Ratliff*, 999 F.3d at 1026. If, on the other hand, counsel complied with Defendant's instruction not to appeal, after any required

7

consultation, the putative failure to appeal will disappear as a basis for relief and also will preclude review of any procedurally defaulted theories.

"In reviewing a § 2255 motion in which a factual dispute arises, the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Huff*, 734 F.3d at 607 (citations and internal quotation marks omitted). However, where "the record conclusively shows that the petitioner is entitled to no relief," an evidentiary hearing is not required. *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999). Additionally, if a petitioner's allegations "cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact," an evidentiary hearing is not required. *Id.* (citations and internal quotation marks omitted). The Sixth Circuit has held that counsel's years of experience and lack of disciplinary proceedings are not sufficient to render allegations of ineffective assistance of counsel inherently incredible; instead, the government must offer more than "contrary representations" to contradict the allegations. *Huff*, 734 F.3d at 607–08 (internal citation and quotation marks omitted).

Based on the briefing and the evidence presented at the evidentiary hearing, Defendant has not established that he instructed Mr. Storm to file an appeal. His testimony that he instructed Mr. Storm to file an appeal is not credible for several reasons. First, Mr. Storm's representation of Defendant included steps designed to preserve Defendant's appellate rights, and it is not believable that Mr. Storm would have taken those steps only to later fail to appeal as instructed. In his Sentencing Memorandum, Defendant, through Mr. Storm, raised an objection to his pre-sentence investigation report, specifically that the offense conduct should reflect the amount of oxycodone pills attributable to Defendant as established through testimony at trial, rather than the amount calculated in the pre-sentence investigation report, which attributed a

8

higher quantity of pills to Defendant based on medical and pharmaceutical records not introduced at trial. D.E. 215 at 2–3. Mr. Storm included with his affidavit attached to the United States' response to Defendant's section 2255 motion a copy of a piece of ruled notebook paper containing the statement "I Craig West decline to filed an appeal 9/27/12" signed by Craig West. D.E. 295-1 at 12. Defendant testified at the evidentiary hearing that he did write that statement and that the signature below it is his, but he denies doing so knowingly. Evidentiary Hearing at 12:21–13:02, [hereinafter Hearing]. Mr. Storm testified during the evidentiary hearing that the remaining notations on the page in the top left-hand corner are his notes indicating the date of his visit to Defendant, that he drove 30 minutes to the Pulaski County Detention Center, that he met with Defendant from 11:30 a.m. to 1:30 p.m. that day and discussed Defendant's appellate rights, and that he drove 30 minutes back to London. *Id.* at 54:29–55:10. He arranged the meeting in the morning to allow sufficient time to file a notice of appeal that same day, which was the deadline to do so. *Id.* at 48:41–49:57

Mr. Storm testified that he had Defendant write and sign that statement in order to memorialize Defendant's instructions to him. *Id.* at 56:20–56:32. He testified that he also had Defendant author and sign the statement because, regarding his objection to the pre-sentence investigation report (referred to as the PSR by Mr. Storm) and the pill count contained therein,

> in order to preserve the record . . . we had to file an . . . objection to the PSR in the event he wished to file an appeal. We filed that objection, it was litigated, it was overruled by the sentencing judge. At that point, I wanted to make sure that since we had filed that PSR objection, that if he wanted to file an appeal it was preserved, but since we had filed the PSR objection, and now he's instructed me he doesn't want to file an appeal, to put that in writing to verify what his actual intent was.

*Id.* at 56:32–57:27. Mr. Storm also sent Defendant two letters, admitted at the hearing as Government Exhibits 1 and 2, dated September 12, 2012, and September 14, 2012, respectively,

9

both of which contain language alerting Defendant to the 14-day deadline to file an appeal and its imminent approach, and note that Mr. Storm had received no word of Defendant's intentions as to his appellate rights. Attached to the September 12, 2012 letter is a copy of a document entitled Court's Advice of Right to Appeal signed by Defendant on September 11, 2012 (the date of his sentencing), which instructed Defendant on how to file a pro se appeal.[1]

Mr. Storm's actions as reflected in the record and the letters he sent Defendant show that he diligently worked to preserve Defendant's right to appeal his sentence by arguing the sentencing judge erroneously calculated the oxycodone amount attributable to him. Mr. Storm then undertook efforts to verify that, despite the preservation of the objection for appeal, Defendant did not want to file an appeal. This concern for the preservation of Defendant's appellate rights and careful record-keeping strongly suggests that Mr. Storm would have filed an appeal if Defendant had instructed him to do so, and thus that because Mr. Storm did not file an appeal, Defendant did not instruct him to do so.

Second, the handwritten note by Defendant stating that he declined to appeal is the best evidence of what occurred on September 27, 2012. To discredit this evidence, the Court would have to find that Mr. Storm set up that memorialization as a ruse and then intentionally failed to file an appeal despite Defendant's verbal instruction to do so. This is not plausible and Defendant did not offer any evidence to support the contention that Mr. Storm intended to deprive Defendant of his appellate rights. While Mr. Storm offered evidence that he strove to preserve Defendant's appellate rights and carry out Defendant's wishes in regard to those rights

---

[1] While Defendant testified that he never received those letters, Mr. Storm testified that mail addressed to inmates at the Pulaski County Detention Center that is not able to be delivered to the addressee is returned to the sender. *Id.* at 25:00–25:10, 25:16–25:28, 58:37–59:43. While he did not testify to this matter directly, the inference to be drawn from Mr. Storm's answers is that he did not receive returned mail as to those two letters, thus indicating that Defendant did receive them. However, whether Defendant received the letters is immaterial given the meeting that occurred on September 27, 2012. Mr. Storm's preparation and mailing of the letters shows he acted so as to preserve Defendant's appellate rights.

as discussed above, Defendant did not offer any evidence to the contrary. He simply stated that Mr. Storm did not tell him about the "good things that went along with" exercising his appellate rights, that Mr. Storm told him he was likely to receive a higher sentence if he successfully challenged his conviction or sentence at the appellate level, and that Mr. Storm did not file an appeal as instructed. *Id.* at 4:52–5:28; 6:18–7:24. This testimony does not establish an intent to deprive Defendant of his appellate rights.

Finally, while Defendant testified that the meeting between himself and Mr. Storm on September 27, 2012 lasted only 30 minutes, Mr. Storm testified that it lasted approximately two hours, and that this is accurately reflected on the piece of paper memorializing Defendant's declination to file an appeal. *Id.* at 13:37–13:44, 46:45–47:04, 55:32–55:41. Regardless of whether the meeting lasted 30 minutes or two hours, that length of time is inconsistent with Defendant's testimony of what was discussed and what occurred during that meeting. Defendant testified that he and Mr. Storm did not discuss any specific issues that could or would be appealed and that Mr. Storm did not advise him of "the good things" that are associated with an appeal. *Id.* at 31:50–32:11. When questioned by the Court, Defendant could not explain why a meeting where so little was discussed took 30 minutes to complete. *Id.* at 32:17–32:41. The Court does not find Defendant's testimony on this issue credible. The Court finds it likely that there was some additional discussion regarding Defendant's appellate rights, and that the outcome of this discussion was Defendant's instruction not to appeal.

Defendant has not met his burden to establish that he instructed Mr. Storm to file an appeal. Thus, he has not established cause for his failure to raise claims 6–9 on direct appeal. Because Defendant has not established cause, the Court will not undertake an analysis as to prejudice.

Even without cause and prejudice, Defendant may avoid procedural default of claims 6–9 if he can show that reviewing his claims would prevent a fundamental miscarriage of justice, such as a constitutional violation that has probably resulted in a conviction of one who is actually innocent. *Bousley*, 523 U.S. at 622–23. However, Defendant has not asserted that he is actually innocent of the crimes for which he was convicted, let alone provided any new evidence to establish his innocence, nor has he shown that reviewing his claims would prevent some other fundamental miscarriage of justice. Defendant's claims 6–9 are thus procedurally defaulted, and the Court will not address them on the merits.

### C. Ineffective Assistance of Counsel

Other than his first claim of ineffective assistance of counsel, discussed above, Defendant alleges that counsel was ineffective in four ways: 1) That counsel was ineffective for failing to object to an erroneous instruction by the trial judge instructing the jury that it need only find Defendant guilty by a preponderance of the evidence rather than beyond a reasonable doubt (D.E. 282 at 13); 2) that counsel refused to allow Defendant to testify in his own defense (*Id.* at 13–14); 3) that counsel failed to present a defense because he did not put on proof of Defendant's addiction to oxycodone (*Id.*); and 4) that counsel did not object to the government's use of Defendant's medical and pharmaceutical records and its assertion that Defendant sold every pill prescribed to him (*Id.*).

To successfully assert an ineffective assistance of counsel claim, a defendant must prove both deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (noting that a defendant must prove ineffective assistance of counsel by a preponderance of the evidence). In order to prove deficient performance, a defendant must show that "counsel made errors so serious that counsel was not

functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. A defendant meets this burden by showing "that counsel's representation fell below an objective standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all the circumstances." *Id.* at 688. Judicial scrutiny of counsel's performance, however, is "highly deferential," consisting of a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Notably, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.*

Deficient performance is considered constitutionally prejudicial only when "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. In order to prove prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. When evaluating prejudice, courts generally must take into consideration the "totality of the evidence before the judge or jury." *Id.* at 695. Courts may approach the *Strickland* analysis in any order, and an insufficient showing on either prong ends the inquiry. *Id.* at 697.

### 1. Jury Instruction

Defendant claims that his trial counsel was ineffective for failing to object when Judge Thapar instructed the jury that the standard of proof was preponderance of the evidence, rather than proof beyond a reasonable doubt. D.E. 282 at 13. If counsel failed to object to such an

instruction, it would certainly be deficient performance. However, Judge Thapar did not give such an instruction.

Instruction No. 2 given to the jury states, in relevant part, "The government must prove every element of the crime charged beyond a reasonable doubt. . . . Proof beyond a reasonable doubt means proof which is so convincing that you would not hesitate to rely and act on it in making the most important decisions in your own lives." D.E. 197 at 3. Of course, Instruction No. 2 was read aloud verbatim to the jury. D.E. 270 at 146–48. Defendant provides no specific citation or other evidence to the contrary.

The jury was correctly instructed that the evidentiary standard in order to find Defendant guilty was proof beyond a reasonable doubt. Mr. Storm notes as much as in his affidavit, in which he states, "The Affiant denies the allegations alleged in Mr. West's Claim 1.1 as I feel the Judge appropriately instructed the Jury of the correct standard regarding innocence and guilt." D.E. 295-1 at 3. Because Judge Thapar correctly instructed the jury, it would have been both futile and frivolous to object to the instruction. "Counsel's failure to raise futile objections and arguments does not amount to constitutionally deficient performance." *Lyons v. Caruso*, 202 F.3d 269 (6th Cir. 1999) (Table). *See Goldsby v. United States*, 152 F. App'x 431, 438 (6th Cir. 2005) ("Failing to file a frivolous motion does not constitute ineffective assistance of counsel."). Defendant has not shown that Mr. Storm performed deficiently as to this claim, and therefore an analysis as to prejudice suffered by Defendant is unnecessary. This claim of ineffective assistance of counsel fails.

### 2. Defendant's Right to Testify

Defendant's next claim of ineffective assistance counsel is that he was denied his right to testify in his own defense due to counsel's erroneous advice. D.E. 282 at 13–14. The right to

testify is a fundamental right, but it is subject to knowing and intelligent waiver. *Hodge v. Haeberlin*, 579 F.3d 627, 639 (6th Cir. 2009). Waiver "can be presumed from a defendant's conduct alone, absent circumstances giving rise to a contrary inference." *Id.*

Defendant and Mr. Storm present two different narratives regarding Defendant's choice not to testify at trial. Defendant maintains that counsel advised him not to testify and that he decided to follow counsel's advice against his better judgment. D.E. 282 at 13–14. Mr. Storm avers that the trial strategy was for Defendant to testify, but that Defendant decided not to do so on the last day of trial. D.E. 295-1 at 3–4. Even accepting Defendant's narrative, Defendant cannot show ineffective assistance of counsel as to this claim.

Defendant has not made a showing that Mr. Storm performed his duties as counsel deficiently. Judicial scrutiny of counsel's performance is "highly deferential," consisting of a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Defendant has not asserted that he was unaware of his right to testify or that he was barred from "seeking the court's assistance in overcoming counsel's allegedly unilateral decision." *Hodge*, 579 F.3d at 639. Nor has he presented "record evidence that he somehow alerted the trial court to his desire to testify." *Id.* In the absence of such a showing, the Sixth Circuit "entertains a strong presumption that trial counsel adhered to the requirements of professional conduct and left the final decision about whether to testify with the client." *Id.* Defendant has not shown that Mr. Storm acted deficiently as to this claim. Moreover, because Defendant "gives no details about the substance of his testimony" that would have been presented, he has not demonstrated prejudice as required by *Strickland*. *Id.* at 640. This claim fails.

### 3. Insufficient Evidence of Addiction at Trial

Defendant's penultimate claim of ineffective assistance of counsel is that counsel failed to present a defense because he did not put on proof of Defendant's addiction to oxycodone. D.E 282 at 13. Defendant specifies that Mr. Storm did not acquire his medical records or pharmaceutical records, and names several witnesses whom he believes would have testified that Defendant was an addict, specifically the doctor who prescribed Defendant's medication, Defendant's wife, the United States Marshals Service, Defendant's children, his mother, his brother, his sister, and unspecified friends. *Id.* Defendant does not state what prejudice he believes flowed from this alleged deficient performance. However, in the underlying substantive claim (claim 7), which is procedurally defaulted as discussed above, Defendant states that such proof "would have given the jury reasonable doubt, which would have resulted in a not guilty verdict." *Id.* at 14.

Mr. Storm states in his affidavit that the government provided in discovery "numerous medical records regarding Mr. West's medical records from his doctor documenting Mr. West's ailments and health complaints, as well as, copies of his prescriptions that were written for pain medication." D.E. 295-1 at 4. At trial, Defendant, through counsel, entered into a stipulation with the United States as to Defendant's medical and pharmaceutical records, D.E. 270 at 9, which indicates that Mr. Storm not only reviewed these records, but also was satisfied with their authenticity and accuracy. Mr. Storm also states in his affidavit that his trial strategy was to call Defendant as the sole defense witness in order to explain his ailments and abuse of prescription medications. *Id.* at 4. Thus, when Defendant chose not to testify on the last day of trial, Mr. Storm did not have sufficient time to call any of Defendant's family members, particularly in light of the fact that none chose to attend his trial. *Id.* at 4–5.

Defendant claims that these witnesses would have testified in his favor regarding the severity of his oxycodone addiction, which would bolster his assertion that he did not sell every pill prescribed to him. D.E 282 at 13, 14. When a defendant claims that his attorney failed to call a witness at trial, he must "[a]t the very least . . . submit sworn affidavits from each of the individuals he has identified as uncalled witnesses stating whether they were in fact available to appear at trial and able to give testimony favorable to [the] defense." *Talley v. United States,* No. 1:00-cv-74, 2006 WL 3422997, at *10 (E.D. Tenn. Nov. 27, 2006); *see also United States v. Ashimi,* 932 F.2d 643, 650 (7th Cir. 1991) ("Under whatever framework, however, evidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim."). Having failed to present such affidavits, the Court cannot make any real assessment of how any testimony from the unidentified defense witnesses would have affected the outcome of the trial.

Defendant's argument assumes that one either takes oxycodone or sells oxycodone, but not both, when the reality is that distributors of controlled substances may also be addicts, as was established at trial. *See* D.E. 268 at 213–215; D.E. 269 at 43–44, 295. Had Mr. Storm presented evidence that Defendant was addicted to oxycodone, this would not have negated the evidence at trial that Defendant sold a large quantity of pills to other members of the conspiracy. D.E. 268 at 143–45; D.E. 269 at 126–37, 168, 199–200, 256–57. Because Defendant is unable to make a showing of prejudice, the Court will not address the deficient performance prong, *see Strickland*, 466 U.S. at 697, and this claim fails.

### 4. Medical and Pharmaceutical Records

Finally, Defendant claims that Mr. Storm provided ineffective assistance of counsel when he failed to object to the United States' use of Defendant's medical and pharmaceutical records and its assertion that he sold every pill prescribed to him. D.E. 282 at 13. At trial, each defendant entered into a stipulation with the United States as to medical and pharmaceutical records provided in discovery. D.E. 270 at 9. Mr. Storm could have decided not to stipulate to the introduction of the records, requiring the government to prove that the records were admissible evidence as required by the Federal Rules of Evidence. However, Defendant makes no allegations that the medical and pharmaceutical records used by the government were inaccurate, inauthentic, irrelevant, overly prejudicial, or that anything else that could serve as a basis for an objection to their introduction pursuant to the Federal Rules of Evidence. Objecting to the introduction of Defendant's medical and pharmaceutical records without a basis to do so would be frivolous. Neglecting to make frivolous objections is not ineffective assistance of counsel. *See Goldsby v. United States*, 152 F. App'x 431, 438 (6th Cir. 2005) ("Failing to file a frivolous motion does not constitute ineffective assistance of counsel.").

Additionally, Defendant objects to the government's use of these records because they were used to calculate the amount of drugs attributable to him, in conjunction with the assertion that he sold every oxycodone pill prescribed to him. D.E. 282 at 13. However, with respect to Defendant's conviction, Defendant was charged with conspiracy to distribute and possess with intent to distribute an unspecified quantity of oxycodone. D.E. 1. Therefore, the United States did not need to prove that Defendant conspired to distribute any particular amount of oxycodone, only that he was part of a conspiracy to distribute and possess with intent to distribute some oxycodone. Whether Defendant sold each and every pill prescribed to him was immaterial for

the purposes of his conviction; the government needed to prove beyond a reasonable doubt only that he was a member of the charged conspiracy and that he joined the conspiracy willingly. With regard to Defendant's sentence, Mr. Storm did challenge the pill quantity and Defendant has not shown any deficient performance concerning that challenge. Thus, Defendant has not established deficient performance, and this claim fails.

### III. CERTIFICATE OF APPEALABILITY

A Certificate of Appealability may issue where a movant has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard requires a movant to demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see Miller-El v. Cockrell*, 537 U.S. 322, 335–38 (2003) (discussing development of standard). The reviewing court must indicate which specific issues satisfy the "substantial showing" requirement. 28 U.S.C. § 2253(c)(3); *see Bradley v. Birkett*, 156 F. App'x 771, 774 (6th Cir. 2005) (noting requirement of "individualized assessment of . . . claims") (citing *Porterfield v. Bell*, 258 F.3d 484, 487 (6th Cir. 2001)). For dismissals on procedural grounds, as to when a Certificate of Appealability should issue, a movant must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

The Court has considered the issuance of a Certificate of Appealability as to each and every claim presented by Defendant. However, no reasonable jurist would find the assessments on the merits above to be wrong or debatable; thus, no Certificate of Appealability should issue. Moreover, many of Defendant's claims are procedurally barred, but no jurist of reason would

find that the question of whether the motion states a valid claim of the denial of a constitutional right is debatable. Nor would any jurist of reason find the correctness of the procedural rulings above to be debatable.

## IV. RECOMMENDATION

For the reasons discussed above, the Court **RECOMMENDS** that the District Court **DENY** Defendant's motion for 28 U.S.C. § 2255 relief. The Court also **RECOMMENDS** that the District Court **DENY** a Certificate of Appealability as to all claims.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute. *See also* Rules Governing Section 2255 Proceedings, Rule 8(b). Within fourteen days after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, de novo, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 18th day of July, 2014.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge